**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION**

| | |
|---|---|
| **STEVE DIFRANCO,** ) | **CASE NO. 1:07 CV 3753** |
| ) | |
| **Plaintiff,** ) | |
| ) | |
| v. ) | **JUDGE DONALD C. NUGENT** |
| ) | |
| **RICK CASE MOTORS, et al.,** ) | |
| ) | **MEMORANDUM OPINION** |
| **Defendant.** ) | |

This matter is before the Court on the Motion to Stay and/or Dismiss and Compel Arbitration filed by Defendants Rick Case Motors, Inc., Ms. Janice Redenshek, Mr. Ken Sidana, and Mr. Rick Case (Docket #4). Pursuant to 9 U.S.C. § 4 and Ohio Rev. Code § 2711, Defendants ask this Court to dismiss and/or stay this case, and compel Plaintiff, Steve DiFranco to arbitrate the claims set forth in his Complaint.

**Factual Background**

Mr. DiFranco was hired by Rick Case Motors, Inc. in January 2006 as a Used Car Sales Manager at Rick Case's Honda dealership in Euclid, Ohio. (Complaint at ¶ 12.) On January 29, 2006, Plaintiff signed a document entitled "Comprehensive Agreement - Employment At-Will and Arbitration" ("the Arbitration Agreement"). (Defendants' Motion to Compel at p. 3.) The Arbitration Agreement reads, in pertinent part, as follows:

      2.    I also acknowledge that the Company promotes a voluntary system of alternative dispute resolution which involves binding arbitration to resolve all disputes which may arise out of the employment context. Because of the mutual benefits (such as reduced expense and increased efficiency) which private binding arbitration can provide both the Company and myself, I voluntarily agree that any claim, dispute, and/or controversy (including, but not limited to, any claims of discrimination and harassment, whether they be based on this State's Civil Rights Act, Title VII of the Civil Rights Act of 1964, as amended, the Age Discrimination in Employment Act, as well as all other state or federal laws or regulations) which would otherwise require or allow resort to any court or other governmental dispute resolution forums between myself and the Company (or its owners, directors, officers, managers, employees, agents, and parties affiliated with its employee benefit and health plans) arising from, related to, or having any relationship or connection whatsoever with my seeking employment with, employment by, separation of employment, or other association with the Company, whether based on tort, contract, statutory or equitable law, or otherwise, . . . shall be submitted to and determined exclusively by binding arbitration under the Federal Arbitration Act, in conformity with the procedures of this State's Arbitration Code . . . I UNDERSTAND THAT BY VOLUNTARILY AGREEING TO THIS BINDING ARBITRATION PROVISION, BOTH I AND THE COMPANY GIVE UP OUR RIGHTS TO TRIAL BY JURY.

      3.    It is further agreed and understood that any agreement contrary to the foregoing must be entered into, in writing, by the President of the Company. . . .

* * *

MY SIGNATURE BELOW ATTESTS TO THE FACT THAT I HAVE READ, UNDERSTAND, AND AGREE TO BE LEGALLY BOUND TO ALL OF THE ABOVE TERMS.

Mr. DiFranco's employment with Rick Case was terminated on October 11, 2007.

(Complaint at ¶ 38.)

## Procedural History

On December 10, 2007, Mr. DiFranco filed this lawsuit. Mr. DiFranco sets forth three claims. In Count I, ERISA-Interference with Benefits, Mr. DiFranco alleges Defendants terminated his employment with the specific intent to violate the Employee Retirement Income

Security Act. (Complaint at pp. 6-7.) Specifically, Mr. DiFranco alleges that Defendants' desire to avoid pension liability to Plaintiff was a determining factor in the decision to terminate his employment. (Id.) In Count II, Interference with FMLA Rights, Mr. DiFranco alleges that there is a causal connection between his stated intention to exercise rights under the Family Medical Leave Act and the termination of his employment, in violation of the FMLA. (Complaint at pp. 7-8.) In Count III, Ohio R.C. 4112-Disability Discrimination, Mr. DiFranco alleges that he was terminated, at least in part, because of his disability, perceived disability and/or history or [sic] disability, even though he was allegedly able to safely and substantially perform the essential functions of the job from which he was terminated. (Complaint at pp. 8-9.)

On December 26, 2007, Defendants filed their Motion to Stay and/or Dismiss and Compel Arbitration (Docket #4). Defendants argue that Mr. DiFranco contractually committed to resolving his claims through binding arbitration when he signed the Arbitration Agreement at the start of his employment. Mr. DiFranco argues that the Arbitration Agreement cannot be enforced. Mr. DiFranco lists the following as defeating application of the Arbitration Agreement:

- First, Mr. DiFranco asserts that the Arbitration Agreement is not supported by consideration. Mr. DiFranco argues that continued employment is not sufficient consideration. Mr. DiFranco notes that the Arbitration Agreement states that it is voluntary and that there is "nothing to suggest that DiFranco's purported agreement to be bound is a condition of or in consideration of his employment." (Plaintiff's Brief in Opposition at pp. 7-8.)

- Second, Mr. DiFranco argues that he will not receive a benefit by way of the reduced expense and efficiency of arbitration. Mr. DiFranco asserts that because Defendant Ken Sidana is no longer employed by Rick Case, and has no standing to enforce the Arbitration Agreement, Plaintiff will be forced to litigate his claims in this Court while pursuing arbitration against the three remaining Defendants. (Id. at p. 9.)

- Third, Mr. DiFranco argues that the Arbitration Agreement is not supported by mutuality because Rick Case could revoke or change it at any time. " Mr. DiFranco argues that he "was asked to voluntary [sic] agree to arbitrate any disputes and to forego the right to a jury trial" but that because Defendants' Handbook references "Employment at Will" and gives Defendants the unilateral right to "change or amend" Defendants' personnel policies, Defendants "destroy the mutuality which they claim as the consideration for the purported agreement." (Id. at pp. 10-12.)

- Mr. DiFranco also argues that even if the Arbitration Agreement is valid, none of the named Defendants is a signatory to the Arbitration Agreement. Mr. DiFranco argues that Defendants failed to substantiate the Rick Case Automotive Group is a d/b/a of Rick Case Motors, Inc. Rick Case Motors, Inc. is named in the Complaint while the Arbitration Agreement refers to Rick Case Automotive Group. (Id. at p. 12.)

- Finally, Mr. DiFranco argues that he did not have "adequate time to read," was "not advised that [he] could consult with counsel" and was "not invited to provide input" into his arbitration agreement. (Id. at pp. 1-2.)

**Discussion**

The Federal Abritration Act ("FAA") expresses a strong Congressional policy in favor of upholding arbitration agreements. *Gilmer v. Interstate/Johnson Lane Corp.*, 500 U.S. 20, 24 (1991). The FAA directs courts "to place arbitration agreements on the same footing as other contracts." *Id.* As stated by the Sixth Circuit, "[t]he FAA was designed to override judicial reluctance to enforce arbitration agreements, to relieve court congestion, and to provide parties with a speedier and less costly alternative to litigation." *Stout v. J.D. Byrider*, 228 F.3d 709, 714 (6th Cir. 2000). "'[B]y agreeing to arbitrate a statutory claim, a party does not forgo the substantive rights afforded by the statute; it only submits to their resolution in an arbitral, rather than judicial, forum." *Gilmer*, 500 U.S. at 26 (citing *Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*, 473 U.S. 614, 628 (1985)). Therefore, the Court must interpret the arbitration clause using standard principles of contract interpretation and in light of the strong policy

-4-

favoring arbitration.

In this case, the Parties do not appear to disagree that all of the claims fall within the scope of the arbitration clause, nor do they argue that the claims were intended by Congress to be non-arbitrable or otherwise not subject to arbitration. Therefore, the only question before this Court is whether the Arbitration Agreement itself is enforceable. *See Stout*, 228 F.3d at 714.

Section 2 of the FAA, 9 U.S.C. § 2, provides that an arbitration clause "shall be valid, irrevocable, and enforceable save upon such grounds as exist at law or in equity for the revocation of any contract." "An arbitration agreement may be voided for the same reasons for which any contract may be invalidated, including forgery, unconscionability, and lack of consideration." *Glazer v. Lehman Brothers, Inc.*, 394 F.3d 444, 450 (6th Cir. 2005) (citing *Fazio v. Lehman Bros., Inc*., 340 F.3d 386, 392 (6th Cir 2003)). The Court is to apply "ordinary state-law principles that govern the formation of contracts" in making this determination. *Fazio*, 340 F.3d at 294 (citing *First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 944 (1995)).

Mr. DiFranco signed the Arbitration Agreement on January 29, 2006, the day after he was hired. Pursuant to the express language of the Arbitration Agreement, Mr. DiFranco "voluntarily" agreed to submit his claims to binding arbitration. The Arbitration Agreement cites the mutual benefits of reduced expense and increased efficiency, as well as the fact that both Mr. DiFranco and "the Company" are giving up their rights to a trial by jury. The Arbitration Agreement ends with the phrase "my signature below attests to the fact that I have read, understand, and agree to be legally bound to all of the above terms."

Mr. DiFranco raises several arguments as to why the Arbitration Agreement is invalid. None of the arguments are well-taken.

**1.     Consideration.**

Mr. DiFranco argues that there is no consideration to support the Arbitration Agreement. The Court does not agree. While the Agreement itself conveys that participation is voluntary, thereby not implicating the idea that continued employment is dependent upon participation, the Agreement also notes the Parties' shared interest in reducing the expense and time that would otherwise result from litigation. Both Parties agreed to waive their right to trial and have their disputes arbitrated.

Further, the Court finds Mr. DiFranco's assertion that he is no longer subject to the Arbitration Agreement based upon filing this lawsuit, and having his attorney send a letter to Defendants expressing his intent not to be bound by its terms, to be misplaced. This is an attempt by Mr. DiFranco to unilaterally remove himself from his obligations under the Arbitration Agreement. However, by signing the Arbitration Agreement, Mr. DiFranco agreed to submit his claims to binding arbitration, including those claims relating to his separation from employment. The Parties agreed that any agreement contrary to the terms of the Arbitration Agreement must be entered into, in writing, by the President of the Company. No such writing has been produced and Mr. DiFranco remains bound by the terms he agreed upon. To accept this argument, the Court would have to essentially permit Mr. DiFranco to breach his contract.

Mr. DiFranco also asserts that because Ken Sidana is named as a Defendant in the case, but is no longer an employee of Rick Case, any consideration in the form of reduced expense and time is negated because Mr. DiFranco would be required to follow through with arbitration as to the other Defendants, and still file a lawsuit against Ken Sidana with the Court. The Court can find no basis for this argument. Mr. DiFranco agreed, in signing the Arbitration Agreement, that

-6-

all of his claims, between himself and the Company (or its . . . managers, employees, agents) would be submitted to binding arbitration. Further, Mr. Sidana is represented by the same attorneys as the other three Defendants, and is one of the Parties requesting that this Court compel arbitration. Therefore, Mr. DiFranco's argument is not well-taken.

**2.  Mutuality.**

The concept of mutuality of obligation requires that both parties to a contract be bound by its terms. *Raasch v. NCR Corp.*, 254 F. Supp. 2d. 847, 855 (S.D. Ohio 2003). In the context of an arbitration agreement, mutuality requires that both Parties agree to be bound by the resolution of any dispute they agreed to arbitrate. *Id.*

Mutuality exists relative to the Arbitration Agreement entered into between Mr. DiFranco and his employer. Mr. DiFranco argues that his employment at-will status, and the statements in the Rick Case Automotive Group Personnel Handbook regarding his employer's right to change policies at any time, defeats mutuality. The Court does not agree.

The Personnel Handbook language cited by Mr. DiFranco is as follows:

> The policies, procedures, and guidelines outlined in the Personnel Handbook apply to all employees. From time to time, it may be necessary to change or amend this Personnel Handbook. Changes in policy and procedures will be communicated to you in writing from time to time and these changes will be construed as changes to the Personnel Handbook.

(Exhibit C to Plaintiff's Brief in Opposition, at p. 3.)

There is nothing to suggest that Defendants' right to change the policies and procedures set forth in the Personnel Handbook would permit Defendants to alter the terms of the Arbitration Agreement. The Arbitration Agreement was executed as a separate document and specifically states that any agreement to the contrary must be entered into in writing by the

President of the Company.  This case differs from the cases relied upon by Mr. DiFranco in his Brief in Opposition in that nothing allows Defendants in this case to unilaterally bind Mr. DiFranco to terms of arbitration other than those he agreed to when he signed the Arbitration Agreement on January 29, 2006.  There is nothing to suggest that if Defendants sought to change the obligations under the Arbitration Agreement that Mr. DiFranco would be obligated to abide by the terms of an amended arbitration agreement to which he had not consented.  The Arbitration Agreement in this case has been in effect at all times relevant to this case, is a binding commitment supported by consideration, and there is no rational basis upon which to argue lack of mutuality.  Accordingly, Mr. DiFranco's argument is not well-taken.

### 3. Rick Case Motors, Inc. v. Rick Case Automotive Group.

Mr. DiFranco's Complaint names Rick Case Motors, Inc., Rick Case, Janice Redenshek and Ken Sidana as Defendants.  The Arbitration Agreement states that it is between the Rick Case Automotive Group and Mr. DiFranco.  Mr. DiFranco argues that Defendants failed to substantiate that Rick Case Automotive Group is d/b/a Rick Case Motors, Inc., thereby defeating the Arbitration Agreement.  Mr. DiFranco asserts that at no time during his employment was it suggested or made known that Rick Case Motors, Inc. was d/b/a Rick Case Automotive Group.

The Arbitration Agreement states that arbitrable claims include those between Mr. DiFranco and the Rick Case Automotive Group, and its owners, directors, officers, managers, employees, agents, and parties affiliated with its employee benefit and health plans.  Attached to Mr. DiFranco's Brief in Opposition were the Personnel Handbook of the Rick Case Automotive Group and accompanying acknowledgment of receipt.  Both of these documents reference the Rick Case Automotive Group.

Mr. DiFranco agreed, by signing the Arbitration Agreement, to arbitrate claims against his employer. It is disingenuous to now argue that he somehow thought he was agreeing to arbitrate his claims against someone other than his employer, or that Defendants are trying to enforce an arbitration agreement entered into between Mr. DiFranco and an unrelated entity. This lawsuit arises out of Mr. DiFranco's employment, and whether referencing his employer as Rick Case Automotive Group or Rick Case Motors, Inc., it is clear that both names refer to the entity against which he raises his claims, his employer. Because he agreed to arbitrate claims arising out of his employment against his employer, the Court finds Mr. DiFranco's argument to be without merit.

**4.      Additional claims.**

Mr. DiFranco's additional arguments that he did not have "adequate time to read," was "not advised that [he] could consult with counsel" and was "not invited to provide input" into his arbitration agreement are not well-taken. "'One who signs a contract is presumed to know its contents, and . . . if he has had an opportunity to read the contract which he signs he is bound by its provisions.'" *Stout*, 228 F.3d at 715 (*citing Sears, Roebuck & Co. v. Lea*, 198 F.2d 1012, 1015 (6th Cir. 1952)). In the absence of fraud or willful deceit, one who signs a contract which he has had an opportunity to read and understand is bound by its provisions.'" *Id.* (quoting *Allied Steel and Conveyors, Inc. v. Ford Motor Co.*, 277 F.2d 907, 913 (6th Cir. 1960).

There has been no evidence presented to the Court that Mr. DiFranco was unable to understand or comprehend the terms of the Arbitration Agreement, nor is there evidence that he was forced to sign the Arbitration Agreement when his employment began. By signing the Arbitration Agreement, Mr. DiFranco voluntarily agreed to be bound by its terms. Aside from

his unsupported assertion, there is no evidence that Mr. DiFranco was denied adequate time to read the Agreement or that he requested additional time and his request was denied.  Further, there is basis for his arguments that Defendants were required to advise him to consult with counsel or that he should have been afforded the opportunity to provide input as to the Arbitration Agreement.  Accordingly, Mr. DiFranco's arguments are without merit.

## Conclusion

Based on the foregoing, Defendants' Motion to Compel Arbitration is hereby GRANTED.  Because all of Plaintiff's claims are subject to binding arbitration between the Parties, this case is hereby DISMISSED.

IT IS SO ORDERED.

 s/Donald C. Nugent
DONALD C. NUGENT
United States District Judge

DATED:  March 24, 2008